## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **PLAINTIFFS LISTED IN ATTACHED EXHIBIT A** | : | **CASE NO.** |
| | : | |
| **PLAINTIFFS.** | : | **JUDGE** |
| | : | |
| | : | **COMPLAINT WITH JURY DEMAND** |
| | : | |
| **PAUL MCCARTNEY** | : | |
| **312 WALNUT STREET, SUITE 2530** | : | |
| **CINCINNATI, OH 45202-9914** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **BONEZZI SWITZER POLITO & HUPP CO. L.P.A.** | : | |
| **312 WALNUT STREET, SUITE 2530** | : | |
| **CINCINNATI, OH 45202-9914** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **JASON PASKAN** | : | |
| **312 WALNUT STREET, SUITE 2530** | : | |
| **CINCINNATI, OH 45202-9914** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **THOMAS GLASSMAN** | : | |
| **312 WALNUT STREET, SUITE 2530** | : | |
| **CINCINNATI, OH 45202-9914** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **LINDHORST & DREIDAME Co. LPA** | : | |
| **312 WALNUT ST.** | : | |
| **CINCINNATI, OH 45202** | : | |
| **SERVE:  WALNUT STREET STATUTORY SERVICES, INC.** | : | |
| **312 WALNUT STREET SUITE 3100** | : | |
| **CINCINNATI, OH 45202** | : | |
| | : | |
| **AND** | : | |
| | : | |

1

**JAMES BROCKMAN**
**312 WALNUT ST.**
**CINCINNATI, OH 45202**            :

**AND**                              :

**JACK GOLDBERG**                    :
**312 WALNUT ST.**                   :
**CINCINNATI, OH 45202**             :

**AND**                              :

**LAURIE MCCLUSKEY**                 :
**312 WALNUT ST.**                   :
**CINCINNATI, OH 45202**             :

**AND**                              :

**DAVID WILLIAMSON**                 :
**312 WALNUT ST.**                   :
**CINCINNATI, OH 45202**             :

**AND**                              :

**RENDIGS FRY, KIELY &**             :
**DENNIS, LLP**                      :
**600 VINE ST #2650,**               :
**CINCINNATI, OH 45202**             :

**DEFENDANTS.**                      :

Plaintiffs Frieda Aaron, Patricia Adams, Michelle Agee, Jimmy Allen, Katrina Allen,

Sherry Lynn Allen, Rebecca Applegate, Brad Arnold, George Arnold, Diana Ashcraft, Brian

Atkins, Jonathan Atwell, Thomas Augst, Amanda Ayres, Gayle Bachmann, Caidan Bailey, Nicole

Baker, Paul Baker, Jennifer Ballinger, Cindy Bartlett, Kimberly A Bates, as Administratrix of the

Estate of Tony Falkner, Deceased, Laura Batsche, Nicholas Battista, Joseph Baumgardner,

Steven Bayliss, as Executor of the Estate of Louise Bayliss, Deceased, Michelle Beavan, Phyllis

Bechtold, Judy Beck, Troy Beckelhimer, Nancy Begley, Cathy Beil, Terry Beil, Mackenzie

2

Bender, Denise Benge, Nicholas Benge, Antoinette Benjamin, Shawnda Benton, William

Benton, Denise Bess, Leona Beyer, Trey Billing, Edythe Bishop, Anthony Bode, Kaitlyn Boggs,

Paul Boggs, as Administrator of the Estate of Barbara Boggs, Deceased, Jennifer Bookman,

Patricia Boone, Deena Borchers, Doris Botner, Gerald Botner, Arletta Bowling, Nancy Bowman,

Penny Brackett, Latoya Bradshaw, Christina Brashear, Melissa Braucher, Dominique Bray,

Lindsey Bray, Rebecca Breitenstein, Randal Brewer, Sharon Brice, Michael Brophy, Richard

Brorein, as Executor of the Estate of Eileen Brorein, Deceased, James Brown, Jonathan Brunner,

Kayla Burton, Vicki Buschur, Kathleen Bushelman, Annette Buskirk, Brenda Butler, Michele

Byar, Douglas Callahan, Patrick Calligan, Jan Campbell, Robert Campbell, Andrew Carr,

Bunnavuth Chhun, Tonya Chisman, Chris Clark, Jessica Cochran, John Collins, Elizabeth

Compo, David Conger, Kenneth Conger, Brenda Conley, Dana Conley, Michael Cook, Gary

Coots, Jacob Cotter, Sandra Couch, as Administratrix of the Estate of Jackie Couch, Deceased,

Eric Courtney, Michael Crail, Karen Crissinger, Carrie Crowe, Forrest Crowe, Carrie Crowe,

Forrest Crowe and Carrie Crowe, as Next Friend of their Minor Daughter, K.C., Joi Crowe, Joy

Cullins, Kathryn Curley, William Dabney, Tammy Dale, Joseph Davis, Nellie Davis, Ralph

Dawson, Ollie Deaton, Stefanie Deaton, Damon Deck, Sandra Dennis, Robert Densler, Kristine

Dority, Carolyn Dotson, Deborah Doyle, Douglas Drafts, Patrick Dugan, Billy Dugger, Dawn

Dunklin, Jacob Durham, Darrell Earls, Mona Eder, Kevin Elfers, Richard Elliott, Brenda

Errgang, Tracy Esselman, Arlene Fait, Linda Favaron, as Executrix of the Estate of Neil Favaron,

Deceased, Jacob Feltner, Karen Feltner, Caela Finnell, Troy Fite, Francine Ford, Shamyia Ford,

Lennie Fossett, Amanda Franks, Joann Frazier, Julie Freeman, Judith Gardner, Christine Geralds,

Mary Gerbus, as Administratrix of the Estate of Lois Hughes, Deceased, Erma Jean Gilbert,

Christina Goldstein, Donna Good, Greg Graber, Maurice Grabow, Erin Greelish, Gloria Greene,

Robbie Gregory, Carla Griessman, Susan Griffin, Jenny Grimm, Melissa Habermehl, Lenora Haggard, Taura Halbert, Individually and as Next Friend of her Minor Son, P.H., Lynn Haley, Alyssa Hall, David Hall, Administrator of the Estate of Lisa Hall, Deceased, Ruhama Hall, Dorothea Hamilton, Samantha Hamilton, William Hamilton, Courtney Hammons, Ryan Handorf, Timothy Hannon, Adam Hartman, Kevin Hartness, Jessica Hastings, Wayne Hatfield, Stephanie Hawks, as Executor of the Estate of Nancy Boland, Deceased, Douglas Hayes, Executor of the Estate of William Hayes, Deceased, Emily Haynes, Minuet Healy, Denise Helton, Evelyn Helton, Debra Henderson, Kelly Hennessy, Barbara Hensley, Ryan Hensley, Emily Herbert, Kathy Hersley, Karen Higginbothan, Alissa Hightchew, Michael Hillard, Dirk Hitchcock, Celeste Hoffman, Cathy Holley, Administratrix of the Estate of Linda Kallmeyer-Ward, Deceased, Loretta Hon, Chelsea Hortman, Robert Houghton, II, Ricky Hounchell, Rita Hounchell, Kathryn Howell, Tammy Hughes, Kevin Hunley, Carolyn Hursong, David Huser, Martha Hutton, Irene Hyde, Elsa Ieraci, Melvin James, as Administrator of the Estate of Carrie Britten, Deceased, Tracy Janson, Kimberly Jenkins, Stephanie Jobe, Amber Johnson, Chelsea Johnson, Karen Johnson, Roger Johnson, Sara Jonas, Joan Jones, Rachel Jones, Tammy Jones, Jacqueline Judkins, Individually and as Administratrix of the Estate of Phyllis Judkins, Deceased, Joshua Kauffman, Katelyn Kauffman, Michelle Keplinger, Martha Kibler, Deborah Kidd, Charlotte King, Maggie Knauer, Individually and as Administrator of the Estate of Christopher Knauer, Deceased, Amanda Koch, Rose Koehler, Shannon Koehler, Mike Koelblin, Valarie Kopp, Shelia Pogue Krabacher, Larry Krech, Brandon Lacinak, Natasha Lainhart, Maurine Langford and Lyndon Langford, Individually and as Next Friend of their Minor Son, N.L., Tom Lantry, Patricia Legendre, Karen Leger, Beth Leisring, Sandra Lemmel, Ailene Levan, Adrian Lilly, Derek List, Lynne List, Tammie Little, Tammie Little, Richard Lozier, as Executor of the Estate

Patricia Bruce, Deceased, Rhonda Mains, Shirley Mains, Vicky Mains, Tammy Mann, Jack

Marcheschi, Marsha Martin, Stacy John Martin, Robert Masters, Brandon Mathis, Traci

Matthews, Donald Mauntel, as Next Friend of his Minor Child, M.M., Kimberly Mayer, Derek

Mayfield, James McCain, Jenna McCall, Heather McCann, Christopher McCaughey, as

Administrator of the Estate of Margaret Dailey, Deceased, Kyra McClendon, Barbara McClure,

as Executrix of the Estate of Robert Ellington, Deceased, Barbara McClure, as Executrix of the

Estate of Connie McClure-Ellington, Deceased, Stacy Fletcher, as Executrix of the Estate of

Jeffrey McClure, Deceased, Kevin McDonald, Marcella McDonald, Grant McKenney, Candi

McKinney, Tyler McKnight, Teresa McMillen, Mark McMurren, Kameron McNeal, Kerry

McNeal, Tonia McQueary, Tiffany Meadows, Dawn Merland, Tiffany Messerschmidt, Randall

Metcalf, Diane Meyer, Thomas Meyers, Lyndsey Middendorf, Karen Miller, Ryan Miller,

Samantha Mink, Vera Moffitt, Billie Moore, Debbie Moore, Donald Moore, Stephanie Moore,

Robert Moore, Tim Moore, Sherri Puckett Morrissette, Robert Mounce, Sarra Mueller, Jennifer

Myers, Joetta Nafe, Tonya Neal, Charles Nelson, Marjorie Newman, Teresa Nichols, Rahman

Nisbett, Michelle Noble, Ruvimbo Nyemba, Wendy Oberlander, Michael Odulana, Timothy

Osborn, Dannie Mae Owens, Haley Payne, Jeff Peddicord, Duane Pelfrey, Angela Pennington,

Nancy Pfetsch, as Executrix of the Estate of Kenneth Pfetsch, Deceased, Clarence Phillips,

Heather Pickett, Jeff Potts, Antoine Powell, Bryan Powers, Leslie Powers, as Administrator of

the Estate of Heather Heffner, Katie Prater, Heather Schuster, as Executrix of the Estate of

Lawrence Pridemore, Deceased, Tom Pritchard, as Administrator of the Estate of Sharon

Pritchard, Deceased, Carol Pummell, James Pumpelly, Misty Emerson, as Administrator of the

Estate of Marcia Quinn, Deceased, Sandra Radeke, Margaret Radenheimer, Mary Ravenscraft,

Todd Ray, Samantha Redrow, Danielle Reed, Mark Reed, Jean Fenner, Executor of the Estate of

Juanita Jane Reeder, Deceased, Valerie Reeves, Holly Reifenberger, Jeffrey Remley, Derrill Reynolds, Harry Reynolds, Kent Reynolds, II, Lisa Reynolds, Jordon Ribariu, John Richardson, Jason Riley, Gordon Rister, as Administrator of the Estate of Donna Rister, Deceased, Deborah Roark, Kelly Robinson, Debbie Rodriguez, Jason Romer, Dorothy Rose, Sandra Roundtree, Ronald Rowley, Stephen Carmen, as Administrator of the Estate of Kathrynn Rueve, Deceased, Robert Runtz, Joe Rutter and Christine Rutter, as Next Friends of their Minor Child, C.R., Mike Sand, Chris Scheper, Robin Schiller, Joseph Schimmel, Kim Schmidt, Kevin Schmit, Patrick Schmit, Susan Schock, Steven Andrew Schultz, Timothy Schulze, Ronald Schuster, Delores Scott, Rhonda Scott, Ali Scully, Ruthie Sears, Dana Setters, Glenna Shafer, Asia Shannon, Charlann Shepherd, Patricia Shott, as Executrix of the Estate of Gregory Shott, Deceased, Michelle Sizemore, Heather Slayback, Haley Warren, as Administrator of the Estate of Crystal Slone, Deceased, Donna Smallwood, David Smith, Donald Smith, Orris Smoote, David Snider, Sherrie Spangenberg, Billy Spivy, Eddie Stallings, David Fisher, as Administrator of the Estate of Michelle Stephens, Deceased, Patrick Stephenson, Deon Stigall, Jr., Sierra Stratman, Ryan Tackett, Ryan Tanner, Alex Taylor, Karen Taylor, Ben Thaeler, Brian Thien, Edward Thiessen, Adrienne Thomas, Connie Underwood, Kimberly Underwood, Jacklen Upchurch, Jordan Vance, Shannon Wallace, Vicki Wallace, Katherine Walls, Lindsay Walsh, Tracey Walsh, Michelle Walters, Helen Ward, Michael Watkins, Elaine Waxler, Daniel Webber, Cathleen Weber, Brandon Webster, Laura Weisbecker, Kirstin Weisman, Regina Wesley, Timothy Whalen, Violet Whalen, Lonnie Wheeler, Sophia White, Joseph Wilder, as Administrator of the Estate of Tamathy Wilder, Deceased, Troy Wilder, Benjamin Williams, Kelly Williams, Patrick Willoughby, Carol Wilson, Jetton Wilson, Alisa Wilson, Individually and as Next Friend of her Minor Child, J.W., Paul Wilson, Paula Wilson, Robert Wilson, Terry Wilson, Vicky Wilson, Dawn Wingert, Priscilla

Wittmeyer, Bill Wolder, Billy Wolsing, Theresa Ann Robinson Woods, Carla Wooten, Amber Work, Deborah Worley, as Executrix of the Estate of Fay Rosebery, Deceased, Teresa Worley, Cory Wright, Leah Wright, Cheryl Wyatt, Veronica Yeakle, Evelyn Young, JoAnn Young, Judy Young, Keith Young, Corrine Zachry, Mary Zureick, and Hannah Zymslo (collectively, the "Plaintiffs" listed at Exhibit A hereto), by and through counsel, (collectively, the "Plaintiffs"), by and through counsel, for their *Complaint for Jury Demand* (the "Complaint").

Plaintiffs set forth fully in the style of this action and incorporated here by reference, bring fraud and civil conspiracy claims against all the Defendants:

1. Plaintiffs are all Plaintiffs, or about to be Plaintiffs, in state civil claims against Defendants, Dr. Durrani and CAST and tristate hospitals.

2. The Deters Law Office represents Plaintiffs in those claims.

3. At all times relevant, Mike Lyon was and is at all times referenced in this Complaint a partner, an owner and an employee of the law firm Defendant Lindhorst & Dreidame Co., LPA and all his actions benefited not just himself, but the law firm. Mike Lyon is not a party to this case because he has already been sued for these claims, but he must be a Defendant again based upon four present and past lawyers from their firms being named.

4. The law firm is vicariously liable for Mr. Lyon's, James Brockman's, Jack Goldberg's, Laurie McCluskey's and David Williamson's actions and possibly unknown other lawyers from the Defendant law firm.

5. At all times relevant, James Brockman was and is at all times referenced in this Complaint a partner, an employee of the law firm Defendant Lindhorst & Dreidame Co., LPA and all his actions benefited not just himself, but the law firm.

7

6. The law firm is vicariously liable for Mr. Brockman's actions and possibly unknown other lawyers from the Defendant law firm.

7. At all times relevant, Laurie McCluskey was in 2013, 2014 and 2015 as referenced in this Complaint a partner, an employee of the law firm Defendant Lindhorst & Dreidame Co., LPA and all her actions benefited not just herself, but the law firm.

8. The law firm is vicariously liable for Ms. McCluskey's actions and possibly unknown other lawyers from the Defendant law firm.

9. At all times relevant, Jack Goldberg was in 2013 and 2014 as referenced in this Complaint a partner, an employee of the law firm Defendant Lindhorst & Dreidame Co., LPA and all his actions benefited not just himself, but the law firm.

10. The law firm is vicariously liable for Mr. Goldberg's actions and possibly unknown other lawyers from the Defendant law firm.

11. At all times relevant, David Williamson in 2015, 2016, 2017 and 2018 referenced in this Complaint, an employee of the law firm Defendant Lindhorst & Dreidame Co., LPA and all his actions benefited not just himself, but the law firm.

12. The law firm is vicariously liable for Mr. Williamson's actions and possibly unknown other lawyers from the Defendant law firm.

13. Defendant Paul McCartney is a partner at Bonezzi Switzer Polito & Hupp Co. L.P.A.

14. At all times relevant, Paul McCartney was and is at all times referenced in this Complaint a partner, an owner and an employee of the law firm Defendant Bonezzi Switzer Polito & Hupp Co. L.P.A. and all his actions benefited not just himself, but the law firm.

15. Bonezzi Switzer Polito & Hupp Co. L.P.A. is a law firm doing business in the state of Ohio.

16. Paul McCartney during 2013 and 2014 worked as a partner at Rendigs Fry.

8

17. Rendigs Fry Kiely & Dennis, LLP is named because they are vicariously liable for the actions of Paul McCartney which he was there.

18. At all times relevant, Jason Paskan in 2015 and is at all times referenced in this Complaint, an employee of the law firm Defendant Bonezzi Switzer Polito & Hupp Co. L.P.A. and all his actions benefited not just himself, but the law firm.

19. The law firm is vicariously liable for Mr. Paskan's actions and possibly unknown other lawyers from the Defendant law firm.

20. At all times relevant, Thomas Glassman in 2016, 2017 and 2018 and is at all times referenced in this Complaint an employee of the law firm Defendant Bonezzi Switzer Polito & Hupp Co. L.P.A. and all his actions benefited not just himself, but the law firm.

21. The law firm is vicariously liable for Mr. Glassman's actions and possibly unknown other lawyers from the Defendant law firm.

22. These claims are supported by documentation regarding representations about communication to and from Dr. Durrani by Mike Lyon, Medical Protective and all Defendants.

23. These claims will be supported by testimony and written discovery yet to be taken including a December 2013 request to Mike Lyon and Medical Protective to preserve all communications between them and Dr. Durrani.

24. This is not a prohibited third party bad faith claim. It is a fraud claim.

25. Plaintiffs have standing to assert their claims herein.

26. Plaintiffs' claims will defeat any Motion under Fed. R.Civ.P 12(b)(6) for these allegations in this Complaint are not only true, they must be accepted as true under 12(b)(6).

27. Plaintiffs' claims allege fraud and conspiracy to commit fraud with specificity in accordance with Fed. R.Civ.P 12(b).

28. This Court has jurisdiction under 28 U.S.C. § 1332.

29. Part of the harm to the Plaintiffs, as alleged herein, is that Defendants' actions have blocked the resolution by settlement of the claims and Defendants as leverage in the resolution of these cases including an attempt to AVOID paying full coverage limits. The delay in the resolution of these cases causes egregious harm to the Plaintiffs. In addition, as stated, Plaintiffs have incurred unnecessary legal fees protecting their interest. They also have suffered emotionally and mentally. Numerous Plaintiffs have died before being allowed their day in court.

30. Mike Lyon has repeatedly represented to Courts and counsel for Plaintiffs that the state civil claims could not be settled because Dr. Durrani has not consented and would never consent. This was a ruse. Medical Protective obtained a Court Order allowing them to settle cases without Dr. Durrani's consent but did so two years after Dr. Durrani's flight from the United States.

31. Hundreds of cases are being litigated, on one hand, Medical Protective is claiming that Dr. Durrani has not cooperated in the defense of claims against him since fleeing, yet multiple teams of lawyers are responding to discovery, filing motions, taking depositions and preparing and defending cases in trials. These practices require attorney-client communication under the Ohio Rules of Professional Conduct, Rule 1.4.

32. The Deters Law Firm represents approximately 500 clients in cases for medical malpractice actions against Dr. Abubakar Atiq Durrani and the hospitals where he either worked or had surgical privileges.

33. Among these original Defendant Hospitals are West Chester Hospital (owned by UC Health), Cincinnati Children's Hospital Medical Center, Journey Lite of Cincinnati, Good Samaritan Hospital, Christ Hospital, Deaconess Hospital and Riverview Hospital.

**DR. DURRANI'S FIVE YEAR DEPOSITION FRAUD BY HIS LEGAL COUNSEL**

34. At his February 24, 2018 five year in waiting deposition, Dr. Durrani proved everything Mike Lyon, Paul McCartney and Medical Protective have claimed for five years pertaining to Dr. Durrani's lack of cooperation and refusal to provide a deposition as false. On February 24, 2018, Dr. Durrani repeatedly made it clear, under oath, that he wanted to cooperate in his defense to use his words "from day one" and he was willing to give depositions "from day one." His words. For five years, Mike Lyon, Paul McCartney and Medical Protective represented to Deters Law and to every Court hearing any part of the litigation that Dr. Durrani was unwilling to give a deposition. They made those representations in writing and in open Court. It is a serious consequential fraud of epic proportions.

35. The lawyers involved in Dr. Durrani's deposition game were Mike Lyon, Jim Brockman, Laurie McCluskey and Jack Goldberg from *Lindhorst & Dreidame* and Paul McCartney, Jason Paskan, Thomas Glassman from *Bonezzi Switzer Polito & Hupp Co.* The roles of each of these lawyers is not completely known at this time, but they worked on the cases with Mike Lyon and Paul McCartney. Jim Brockman and Thomas Glassman's roles are more clear as pled and in the exhibit.

36. In addition, Steve Janik and Medical Protective were co-conspirators. He represents Medical Protective.

37. Also, Medical Protective and Mike Lyon make it clear over and over, from the outset, Dr. Durrani and CAST are Mike Lyon's clients, not Medical Protective.

38. Deters Law has had to fight a federal insurance coverage battle against Medical Protective based upon the fraudulent lack of cooperation claim. The issue was used against Deters Law and Plaintiffs in settlement discussions. The issue delayed trials. Plaintiffs who had a trial were cheated out of the deposition.

39. Mike Lyon and Paul McCartney, Dr. Durrani's lawyers, in June 2017 decided after an Order by Judge Jennifer Sargus; then with a new state judge; an Order compelling the deposition from a federal judge; pressure from hospital counsel; and to avoid a severe sanction under CR 37; they needed to pretend a deposition could be taken until the new state court judge ruled on Motions in December 2017.

40. Dr. Durrani's attorney purposefully set the depositions in February and March 2018 past the time Judge Schweikert planned to rule and did rule on Motions in December 2017. Once he ruled, it's obvious the deposition would never happen. The affidavits of disqualification against Judge Schweikert ruined those plans and Mike Lyon and Paul McCartney were faced with three scheduled depositions: February 17, February 24 and March 10 and hundreds of motions not ruled upon. Mike Lyon and Paul McCartney did not want these now scheduled depositions to take place, but worried there could be possible fallout from the cancellation.

41. They canceled the deposition scheduled for February 17, 2018 with a bogus assertion Dr. Durrani needed more counsel from Ed Perry, his criminal lawyer. Of course, Dr. Durrani had five years for this.

42. It has been Plaintiffs' steadfast assertion that Mike Lyon and Medical Protective were involved in Dr. Durrani's flight. However, after that flight, they furthered their conspiracy by feigning lack of cooperation from Dr. Durrani. It began with a Mike Lyon directed email from Dr. Durrani to Medical Protective. From late 2013 through June 2017, Mike Lyon and Paul McCartney either never asked Dr. Durrani about depositions, never informed him about noticed depositions or told him not to do the deposition. The answer came at Dr. Durrani's deposition on February 24, 2018.

43. Medical Protective pays and paid Mike Lyon to defend Dr. Durrani. With Mike Lyon's assistance, Medical Protective thought they could escape coverage.

44. The motive of Medical Protective was $42 million. Mike Lyon's motive was to help his biggest client out of the $42 million mess. And, if there was no settlement because of the "lack of cooperation" defense, Mike Lyon and Lindhorst would and did secure millions in legal fees.

45. It is impossible to reconcile what follows in this story which is supported by all the attachments with what Dr. Durrani testified to at his deposition on February 24, 2018.

46. For five years, Mike Lyon and Paul McCartney have sent letters, filed pleadings and stood in Court passive aggressively acting as if they were "sorry" this is the way it was.

47. EVERY Judge handling these cases except Judge Ruehlman allowed Dr. Durrani to avoid any repercussions for not giving a deposition. Of course, if Plaintiffs refused a deposition, their case would be dismissed.

48. Since Dr. Durrani has been in Pakistan, his counsel has:

   A. Answered lawsuits

   B. Offered defenses

C. Answered discovery

D. Argued in hearings

E. Filed pleadings

F. Tried cases

49. Dr. Durrani received the benefit of not facing cross-examination at a deposition or trial, while he received a full defense including his lawyers cross-examining Plaintiffs, experts and witnesses.

50. Rather than sanction Dr. Durrani for not giving a deposition, Judge Guckenberger initially only instructed the juries "Dr. Durrani elected not to be here." Post-trial, the juries were shocked to hear the truth. They were angry. They confessed they wish they knew the truth. They just thought Dr. Durrani was simply out dedicating his time to "doctors without borders" or other worthwhile causes.

51. *Crystal Pierce*, *Brenda Shell* and *Tim Marshall* had to suffer through the "elected not to be here" instruction to the jury.

52. Next, judges simply instructed juries that Dr. Durrani "left the country" in the *Julie Martin* and *Laura Kranbuhl McKee* trials, with no context to the statement.

53. Not having a Dr. Durrani deposition profoundly and certainly affected the outcome of the *Shell*, *Marshall*, *Martin* and *McKee* trials in Butler County.

54. Dr. Durrani's deposition was read in *Pierce* and a jury awarded a $1.04 million-dollar verdict.

55. Not only has Dr. Durrani fled to Pakistan, he never gave another deposition. He had given six prior to his arrest. As the Court knows, a deposition is sworn testimony and

would have allowed Plaintiff's counsel an opportunity to cross-examine Dr. Durrani on all issues relating to each case and his credibility, background and resume.

56. While in Pakistan Dr. Durrani is beyond the subpoena power of any U.S. Court, and Plaintiffs did not have the option to force the deposition.

57. Not having Dr. Durrani's deposition has affected trial strategies, witness arrangements, trial preparation and presentation. Plaintiffs had to expend extraordinary attorney time fighting federal declaratory action. The result of that action requires a hearing after a trial. Also, Plaintiffs spent extraordinary attorney time pursuing a sanction against Dr. Durrani for not giving a deposition to no avail.

58. Not having a deposition, allowed Medical Protective to take the strongest possible position in settlement discussions. They only ever formally offered $5.2 million of $42 million for 330 covered victims.

59. On February 23, 2013, Deters Law, having six active Dr. Durrani cases, filed seven more cases making Deters Law Dr. Durrani filed cases total thirteen. There was media coverage. After February 23, 2013, when three television stations covered the filing of seven more lawsuits, making the number thirteen, Deters Law soon had over 150 cases. After publicity over Dr. Durrani's arrest, the case number soared to over 500. Deters Law then spent the money and time to have all the cases reviewed by an expert and file and litigate the cases.

60. On July 22, 2013, a Federal Criminal Complaint was filed against Dr. Durrani for false statements regarding to healthcare matters and fraud. Deters Law and their clients not only cooperated with the U.S. Attorney's office, thirteen Deters Law clients testified before the grand jury which returned the indictments.

61. On July 25, 2013, Dr. Durrani was arrested. At his first appearance in Court that day, the Court ordered Dr. Durrani to notify ALL his clients of his criminal charges. His arrest received massive media coverage. By Order of the federal judge, the attached letter is the letter Dr. Durrani had to post in his office and send to his patients to warn them of the criminal charges (**Exhibit 1**).

62. As a result of Dr. Durrani's arrest on August 5, 2013, Mike Lyon canceled Dr. Durrani's previously scheduled August 10, 2013 deposition. **Exhibit 2.**

63. On August 7, 2013, Dr. Durrani was indicted on 5 counts of 18 U.S.C. Section "False Statement related to Health Care Matters." And 5 Counts of 18 U.S.C. Section 1347 "Health Care Fraud.

64. On August 19, 2013, Deters Law wrote to Mike Lyon asking whether the scheduled Dr. Durrani depositions scheduled for August 22, 2013 and August 29, 2013 would take place. **Exhibit 3**. They were canceled.

65. On August 22, 2013, Dr. Durrani in a letter to patients, as ordered, announced his criminal charges.

66. On August 28, 2013, Glenn Whitaker, Dr. Durrani's criminal attorney, in a federal pleading on Dr. Durrani's behalf titled Motion to Modify Conditions of Release stated: **"Dr. Durrani is not a flight risk..."** Dr. Durrani also offered up his wife's and children's passport in an attempt to convince the Court he would never abandon them. Of course, Dr. Durrani would flee and abandon his wife and children. This is another example of the countless frauds Dr. Durrani has committed. A fraud upon a U.S. federal judge.

16

67. On October 16, 2013, Dr. Durrani was then indicted by a Superseding Indictment as

follows:

9 counts of 18 U.S.C. Section 1347 and 2 ("Health Care Fraud")
9 counts of 18 U.S.C. Section 1035
3 counts of 18 U.S.C. Section 1347 and 2
1 count of 18 U.S.C. Section 1035 (a)(1)
1 count 18 U.S.C. Section 1341 and 2 (Frauds and Swindles)
1 count 18 U.S.C. Section 1035 (a)(2)
11 counts 21 U.S.C. Section 841 (a)(1) ("unlawful distribution of a controlled substance") and
841(b)(1)(C)("Penalty subsection.")

68. On November 6, 2013, Medical Protective advised Dr. Durrani of the *Pierce* trial set for

January 6, 2014. **Exhibit 4.** Dr. Durrani signed a NO CONSENT form blocking any

settlement of any case. So not only did he flee, he was defiant. Medical Protective

would later receive federal court approval to settle without his consent. Of course, this

has never happened.

69. On November 25, 2013, there was a scheduled Final Pretrial for Dr. Durrani's federal

criminal trial. A speedy trial was waived by Dr. Durrani. A new trial date was set for

August 14, 2014.

70. On December 6, 2013, according to Shazia Durrani's divorce papers, Dr. Durrani fled to

Pakistan where he is a citizen. His parents and siblings lived there. He traveled to and

from there multiple times a year. While there is an extradition treaty with the U.S.,

Pakistan has not cooperated in any since Bin Laden was killed. Shortly after Dr.

Durrani's flight, Mike Lyon informed Eric Deters of the flight.

71. On a Saturday morning in early December 2013, Mike Lyon called Eric Deters of Deters

Law to inform Deters Dr. Durrani had fled to Pakistan. The first fact Mike Lyon stated to

Eric Deters after the flight news was there would be no coverage now from Medical

Protective. He stated it in a most passive aggressive manner. It struck a chord with Eric

Deters. Mike Lyon stated he would call later in the day for more details. At the scheduled call, Eric Deters, realizing $42 million for his clients was at stake, scheduled a Court reporter to be with him without informing Mike Lyon. This would be the only call with an attorney Eric Deters would ever record in his career and he did so knowing that with Ohio as a one-party state, without any lawyer exception, that it was lawful.

72. In a transcribed phone conversation between Eric Deters and Michael Lyon later that day, Michael Lyon stated: "And you know—so he—you know, they're well aware that they have to cooperate, have to participate, have to be in trial—now I just had a trial in Lima, Ohio; the one I told you about. I told—he was in Hawaii. Now, I told him not to come. I didn't want him there because he was a weird and goofy guy, and I just took a risk and I didn't have him come. Now, if he had said, look, I'm not coming, screw you, well, they would have been in a position to say, fine, we'll defend you, but we're not going to cover you." Mike Lyon, unsuspecting, bragged to Eric Deters how he had successfully played this game before.

73. On December 19, 2013, Dr. Durrani emailed a former patient while Dr. Durrani was in Pakistan. This reflected how Dr. Durrani maintained contact here in the United States and was accessible to even a former patient.

74. On December 19, 2013, Marvin Benson, Sr. Claim Specialist for Medical Protective, in an email to Dr. Durrani referenced a letter he needed a reply to regarding the upcoming trial of *Pierce* scheduled January 6, 2014. **Exhibit 5.**

75. On December 19, 2013, referenced as **Exhibit 4**, Marvin Benson, Sr. Claim Specialist for Medical Protective, sent Dr. Durrani a letter in the *Pierce* case, copied it to Mike Lyon and David Bendel, VP/Regional Manager of Medical Protective and states: "It has come

to Medical Protective's attention that you will not be in attendance at this trial as you are no longer in the United States and have returned to Pakistan." How did that come to his attention? Mike Lyon. The fact this letter was copied to Mike Lyon will reveal itself as critical.

76. On December 23, 2013, there was an email from Dr. Durrani to Marvin Benson: "Mr. Benson. Thank you for the letter. **At this time, I will not be able to return back to the U.S. and unfortunately will not be able to assist in any way in defense of these civil cases.** I regret the inconvenience caused in this regard. AD." This email is very legalese. Civil cases? Of note, it's not copied to Mike Lyon like Marvin Benson's December 19, 2013 letter. **Exhibit 6.** Plaintiffs assert Mike Lyon wrote this for Dr. Durrani and purposefully did not copy himself.

77. On January 2, 2014, Medical Protective's legal counsel, Steven Janik, filed a Complaint for Declaratory Judgment Case No. 1:14-cv-00005. In that lawsuit, Janik states: "Medical Protective retained the law firm of Lindhorst and Dreidame, LPA to defend Durrani and CAST in the Underlying Lawsuits." "By email of December 23, 2013 to Medical Protective, Durrani advised, **"I will not be able to return back to the US and unfortunately will not be able to assist in any way in defense of these civil cases." "Durrani and CAST have failed to cooperate with Medical Protective and assist in the preparation and trial of the Underlying Lawsuits."** The significance? Medical Protective is representing in federal court, Dr. Durrani is NOT assisting in his defense.

78. January 3, 2014, was the original scheduled federal criminal trial date. An Overview of Federal Criminal Cases: Fiscal Year 2012," a report produced by the United States Sentencing Commission's Office of Research and Data, shows that in 2012, there were

84,360 federal criminal cases in which the defendant was sentenced. Of those convicted defendants, 97% pleaded guilty, with fraud being the third largest category of criminal cases during 2012 at 10.5%. The rate of conviction overall remained at over 90%, as it has since 2001. Underlying Plaintiffs ask the Court to take judicial notice of this fact. This fact is the primary underlying basis for this Motion. Based on the above referenced statistics, had Dr. Durrani remained in the United States and not fled to Pakistan, there is a 97% probability that he would have been convicted of, or pleaded guilty to, the criminal charges pending against him. Once convicted of a felony, if Dr. Durrani were present at any of the state civil actions against him, he would have had to admit that he was a convicted felon. This fact alone proves Medical Protective benefitted from Dr. Durrani's flight, was not prejudiced.

79. On January 6, 2014, the *Pierce* trial was scheduled. This would be the first Dr. Durrani trial of Deters Law clients. Mike Lyon called Dr. Durrani by previously taken discovery deposition. Dr. Durrani did not attend the trial.

80. From 2014 to 2018, the questions Plaintiffs were unable to ask Dr. Durrani questions on countless relevant topics are numerous and relevant. They cover his background, liability, causation, damages, credibility, his privileges at hospitals and more. Plaintiffs were only able to depose Dr. Durrani in six cases. After his arrest, and informants gave Deters Law volumes of information they never knew and Deters law obtained the Ohio and Kentucky Medical Board files, Plaintiffs were not able to depose Dr. Durrani again. At trials, Dr. Durrani's legal counsel was able to conduct: voir dire, give an opening, cross witnesses, call witnesses, make motions and give a closing. Plaintiffs had to do the same without Dr. Durrani's deposition.

81. On January 17, 2014, Glenn Whitaker filed a Motion to Withdraw as Counsel for Dr. Durrani and stated: **"As the defendant fled the United States… communication between Vorys and the defendant has ceased,** and the defendant has failed to fulfill financial obligations to Vorys for its services." **Exhibit 7.** Of note, while Dr. Durrani is not communicating with his criminal defense lawyer, Mike Lyon claims he is communicating with Dr. Durrani in Pakistan during this time.

82. On January 22, 2014, Eric Deters requested a telephonic video deposition of Dr. Durrani in the *Cory Wright* case and all cases scheduled for trial. He took the extraordinary step to set the deposition up from LaHore, Pakistan at Doctors Hospital where Dr. Durrani was chief of spine surgery. **Exhibit 8.**

83. On February 3, 2014, there is a letter from Paul McCartney, one of Dr. Durrani's lawyers, to Eric Deters regarding Dr. Durrani's deposition in *Wright*: **"This is in response to your letter of January 22, 2014 requesting the deposition of Dr. Durrani. Dr. Durrani has indicated that he is unable to give a deposition at the present time in this case or in any other case." Exhibit 9.** His legal counsel made it clear. There will be no depositions. Who benefited? Dr. Durrani, the hospitals and Medical Protective.

84. On February 5, 2014, Deters Law asked Paul McCartney for proof Dr. Durrani responded with a refusal to participate in the deposition. **Exhibit 10.** Paul McCartney never responded

85. On February 17, 2014, Dr. Durrani gave medical treatment direction to the same patient he emailed in December 19, 2013. This patient became a client of the Deters Law Firm. This reflects how Dr. Durrani was engaged from Pakistan with even a former patient. **Exhibit 11.**

86. On February 25, 2014, Dr. Durrani's Legal Counsel stated: **"As opposing counsel and the Court are aware, Dr. Durrani has allegedly fled the country. Recent efforts to communicate with him have been fruitless." Exhibit 12.** The "alleged flight" of course is a lie because Mike Lyon told Eric Deters Dr. Durrani fled and the U.S. Attorney's officer confirmed it. In a response to a Motion to Compel, Mike Lyon claims: **"Durrani's attorneys, as officers of the Court, assured that they have properly communicated with their client." Exhibit 13.** Plaintiffs do NOT believe this. Medical Protective, Mike Lyon and Paul McCartney successfully navigated a win for themselves and Medical Protective. They knew if Dr. Durrani gave depositions Medical Protective would have to provide coverage. They also know he was a terrible witness who would be destroyed at his deposition based upon all which had been revealed after his arrest. They won. Medical Protective won.

87. On February 28, 2014, Dr. Durrani's legal counsel answered discovery in the *Shell* case with this statement: **"As opposing counsel and the Court are aware, Dr. Durrani has allegedly fled the country. Recent efforts to communicate with him have been fruitless." Exhibit 14.**

88. On May 7, 2014, Plaintiffs requested Durrani's counsel to advise Deters Law whether or not they informed Dr. Durrani of the notice to depose him in *Romer* and *Feltner*. Paul McCartney replies: **"You are not entitled to know how or if we have communicated to Dr. Durrani about the notices." Exhibit 15.** Not only is Paul McCartney's statement legally wrong, it's clear his response is to protect him, not Dr. Durrani. Paul McCartney can't reveal what was communicated to his client, not how or if.

89. On May 13, 2014, Deters Law acknowledged a dispute regarding Dr. Durrani's discovery answers. **Exhibit 16.**

90. On May 13, 2014, Deters Law asked if Dr. Durrani will appear at his deposition. Mike Lyon responded by letter: **"As requested, we have notified Dr. Durrani at his deposition that you recently noticed. As of May 13, 2014, we have not received any word from Dr. Durrani regarding the deposition."** Exhibit 17.

91. On May 21, 2014, there was an email from Jim Brockman, Mike Lyon's partner, to Deters Law: **"I know I had not had any reply from Dr. Durrani regarding the deposition. I have now heard from Messrs. Lyon and McCartney. They haven't either. If we do hear something from him, we'll be sure to advise you as soon as we can."** Exhibit 18.

92. On May 21, 2014, Plaintiffs cancelled the depositions of Dr. Durrani based upon the representations above. **Exhibit 19.**

93. On May 28, 2014, Deters Firm noticed Dr. Durrani for 99 depositions. **Exhibit 20.**

94. On May 30, 2014, Mike Lyon wrote the Deters Law responding to 99 cases Dr. Durrani is noticed for deposition. They state: **"We have advised Dr. Durrani of this." "He advises he will not be available."** He also stated: "In light of this advice, as was the case in the previously noticed deposition, we shall not insist that you go through the formality of arranging for a court reporter in Pakistan, having the reporter be there and you, personally attend the deposition to prove he is unavailable." **Exhibit 21.** The significance? It also contradicts previous statements that attempts to communicate with Dr. Durrani have been fruitless. Dr. Durrani's lawyers always alternated between claiming communication with him and not, to suit their needs and Medical Protective's

needs. During all his time in Pakistan, Dr. Durrani has worked at Doctors Hospital, had a cell phone, home phone, work phone and email. He's never been unreachable.

95. On June 3, 2014, the discovery answers state: "… since Dr. Durrani has, apparently, fled the country." **Exhibit 22.** They still claim "apparently."

96. On June 6, 2014, Dr. Durrani was scheduled for depositions from Pakistan in 99 cases. They too would not happen.

97. On August 18, 2014, Dr. Durrani's federal criminal trial comes and goes while Dr. Durrani is in Pakistan.

98. On November 25, 2014, there was an email from Paul McCartney to Deters Law Firm: **"Dr. Durrani will not be appearing on Wednesday, November 26th for his deposition in the cases for which you sent notices. As before, it is not necessary for anyone from Plaintiffs' to make a record. Please let me know if you have any questions. Paul" Exhibit 23.** Again, his lawyer informed Deters Law don't waste your time. And note the word choice of Paul McCartney: "will not be appearing." Why? Because he never even told him about the deposition. He did not want to lie and chose his words carefully.

99. The November 26, 2014, the scheduled deposition of Dr. Durrani never takes place based upon Paul McCartney's representation.

100.    It must be stressed why Deters Law kept trying to take Dr. Durrani's deposition. To receive a sanction under CR37, a deposition must be noticed and attempted. One of the greatest injustices to Plaintiffs is that despite all which is being laid out here, only Judge Ruehlman was willing to sanction Dr. Durrani in a serious manner.

101.     On August 31, 2015, Steven Janik, Medical Protective counsel, filed a Motion to Consent to Settle Cases. **Exhibit 24.** In that pleading, Steven Janik wrote: "By leaving the country and stating that he will not return or otherwise assist in the defense of the civil cases pending against him, **Durrani has breached his duty to cooperate,** which is a material condition of the Policies, and as a result Durrani has forfeited his rights under the Policies. *See Luntz,* 135 Ohio St. at 232; 20 N.E.2d at 244." **"Durrani intentionally left the country in response to his indictment in the Criminal Litigation, and has expressly refused to participate in his defense.** This voluntary and intentional conduct warrants the conclusion that Durrani has relinquished all rights under the Policies, including the right to consent to settle." **"Durrani has expressly stated that he will not return or otherwise assist in the defense of the civil cases pending against him."** "As Durrani has fled the country and refused to cooperate with Medical Protective in the preparation of his defense and trial." The significance? Medical Protective is representing in federal court, Dr. Durrani is NOT assisting in his defense.

102.     On January 29, 2016, Medical Protective proposed as a stipulated fact in a federal filing: **"Since Dr. Durrani's email of December 23, 2013, Dr. Durrani has, in fact, not cooperated with Medical Protective with respect to the Underlying Litigation and has neither attended nor assisted in preparation and trial of the Underlying Litigation.** (Ex. 10, Crawford Aff.) **Exhibit 25.**

103.     On February 5, 2016, Steven Janik, Medical Protective counsel, filed in a pleading in federal court: **"Since Dr. Durrani's email of December 23, 2013, Dr. Durrani has not cooperated with Medical Protective with respect to the Underlying**

Litigation and has neither attended nor assisted in preparation and trial of the Underlying Litigation." **Exhibit 26.**

104.     On July 25, 2016, West Chester/UC Health in a federal filing, Motion for Appointment of Receiver, asserts CAST and Dr. Durrani have failed **"to cooperate in the defense of more than 400 underlying civil cases against Dr. Durrani." Exhibit 27.**

105.     On July 25, 2016, Medical Protective in a pleading seeking a receiver in Case No. 1:14-cv-00005 stated: **"Since that time neither Durrani nor CAST have participated in the defense of the Underlying Cases." Exhibit 28.**

106.     And, all of the above paragraphs are a serious misrepresentation. Dr. Durrani's legal counsel have maintained Dr. Durrani has assisted in his defense by reviewing discovery.

107.     On October 21, 2016, there was an Order by Judge Black in favor of Plaintiffs on the Medical Protective action attempting to void coverage. **Exhibit 29.**

108.     On October 27, 2016, Deters Law made another demand to Medical Protective based upon the federal Order. **Exhibit 30.**

109.     On October 28, 2016, George Jonson, Mike Lyon's lawyer, laid out the effect of Judge Black's Order to Deters Law: "In light of Judge Black's decision, each of your clients are required to try their case, secure a verdict and demand payment at which time Medical Protective must refuse to pay and then you will be required to institute suit against Medical Protective and litigate the prejudice that Dr. Durrani's absence caused the defense, if any." **Exhibit 31.** He is right. Another burden to Plaintiffs.

110.     On November 8, 2016, Deters Law demanded $42 million of Medical Protective. **Exhibit 32.**

111.     On November 21, 2016, Deters Law made another demand. **Exhibit 33.**

112.     On December 29, 2016, Deters Law made another demand on Medical Protective. **Exhibit 34.**

113.     On January 9, 2017, Deters Law made another demand to Medical Protective. **Exhibit 35.**

114.     On January 16, 2017, Deters Law made another demand to Medical Protective. **Exhibit 36.**

115.     On January 18, 2017, Deters Law questioned the game Medical Protective was playing. **Exhibit 37.**

116.     On January 18, 2017, Deters Law asked Mike Lyon and Paul McCartney the following: **"Before we file something on the issue, we are giving you an opportunity to explain something. We ask for a response by 5:00 pm on Friday, January 20, 2017. It's not a difficult question. Are you communicating with Dr. Durrani and receiving his assistance and input on what you prepare and file as pleadings; answering discovery; and on all decisions that are made on a daily basis? We are not asking for the substance, just whether you are or are not. If you are or are not, we simply want to know. If you are, we want to schedule his deposition. If you are not, please explain to us how you can ethically represent Dr. Durrani and file pleadings, conduct discovery, answer pleadings, assert defenses, file motions, make decisions etc. on his behalf when he is your client, NOT Medical Protective or River City Insurance. We are asking you for the legal and ethical authority you are doing so.**

**Again, by 5:00 pm Friday, January 20, 2017 we are asking for a response. If you ignore this request, we will take the action based upon the answer being either/or for both." Exhibit 38.** No response would come.

117.       On January 23, 2017, Deters Law questioned Thomas Glassman about Dr. Durrani's deposition. **Exhibit 39.**

118.       On January 23, 2017, Paul McCartney responded by letter and ignored the simple request, that if answered, caused no ethical issue: are he and Mike Lyon receiving communications and input from Dr. Durrani. **Exhibit 40.**

119.       On February 8, 2017, Deters Law sent another demand to Medical Protective. **Exhibit 41.**

120.       On March 16, 2017, Deters Law questioned the communication of Dr. Durrani's lawyers with Dr. Durrani. **Exhibit 42.**

121.       On March 21, 2017, Mike Lyon by letter stated to Deters Law: **"I have consulted with my client and as a result thereof, I am authorized to inform you that he will not attend the deposition or depositions noticed in either notice, copies of which are contained herein. Furthermore, I am authorized to inform you that he will not participate in discovery depositions or trial depositions in these cases." Exhibit 43.** Again, Dr. Durrani's lawyers made representations no depositions now or ever.

122.       On March 21, 2017, Deters Law confirms the upcoming depositions are canceled. **Exhibit 44.** Deters Law had tried again and failed based upon Dr. Durrani's lawyers' representations no depositions now or ever.

123.     On March 24, 2017, Paul McCartney by email states: **"He will not be appearing." Exhibit 45.** Again, Paul McCartney, not the brazen Mike Lyon, again uses the careful phrase- "not be appearing." He doesn't claim communication or refusal.

124.     March 31, 2017 is the scheduled date for Dr. Durrani's deposition. **Exhibit 46.** It never happens.

125.     The attached letter dated April 26, 2017 to Paul McCartney from Deters Law, reflects Deters Law explaining why Paul McCartney had the culpability in the Dr. Durrani deposition issue. Paul McCartney is obviously worried. **Exhibit 47.** Of significance, Paul McCartney refused to agree to give an in-camera review proof to Judge Barrett of proof Dr. Durrani ever received the Order to compel the deposition.

126.     On May 3, 2017, in the *Atwood* cases, Judge Barrett entered the attached Order. As of June 2, 2017, Dr. Durrani was in contempt of that Order. **Exhibit 48.** Dr. Durrani never complies.

127.     The attached Notice of Filing Recent Discovery Answers of Dr. Durrani and CAST in Support of Rule 37 Sanction is discovery was answered by David Williamson. **Exhibit 49.** The requests were sent in every state case. Dr. Durrani did not verify the answers. Williamson claims Dr. Durrani assisted in Interrogatory #1. **Every question was objected to #2-25 under privilege even though it was not privileged except #18: Are you willing to give a deposition in this case to defend your treatment of the Plaintiff? Answer: No. This is May 9, 2017.** Again, a representation by Dr. Durrani's lawyers that Dr. Durrani is not cooperating.

128.    On May 23, 2017, an Order was circulated as in *Atwood* for the state cases. Not one defense lawyer responded or signed it. **Exhibit 50.** They ignored the request. They did not want another Order to compel.

129.    The attached June 1, 2017 letter of Mike Lyon is the first and ONLY time from 2013, 2014, 2015, 2016 to June 1, 2017, where there was a communication to Deters Law in which Dr. Durrani would give a deposition with restrictions. **Exhibit 51.**

130.    The attached letter dated June 2, 2017 details Deters Law response to Mike Lyon's deposition parameters and outlines the recent deposition history. **Exhibit 52.**

131.    The attached June 8, 2017 email exchange between Mike Lyon and Matt Hammer reflect Mike Lyon's anger his 40-year scheduled deposition proposal was rejected. **Exhibit 53.**

132.    On June 9, 2017, Deters Law informed the judges there would be no deposition based upon Mike Lyon's preposterous plan. By this point, Deters Law simply wanted a sanction for Dr. Durrani "refusing" to give a deposition for four (4) years. **Exhibit 54.**

**133.**    On June 26, 2017, Judge Sargus set her first hearing and made it about sanctions. Transcript attached. **Exhibit 55.** Of note, Mike Lyon's representation on page 32 line 25 to page 33 line 10: **"Well, what do we have here? We have a situation where they have asked for Dr. Durrani's deposition for three and a half years, and during which time, for the most part, he said, I'm not going to do it. Okay. But now, your Honor is in this litigation, and now Dr. Durrani says he will do a deposition in every single case. That's the state of the evidence right now; that's the state of the situation right now."** For the most part? According to Mike Lyon and Paul McCartney for four (4) years, he was never giving one. Mike Lyon avoided a deposition for five

years. He now attempted to delay trials further by offering Dr. Durrani for depositions, one a month for 500 plus cases. It was an is absurd.

134.  At this hearing, Judge Sargus wanted to focus on trials, not dispositive motions.

135.  At the June 2017 hearing before Judge Jennifer Sargus, Paul McCartney stated as to Dr. Durrani: "He still needs to make a living." As if Dr. Durrani deserves sympathy. And, Dr. Durrani's Pakistan license has been suspended.

136.  Paul McCartney also claimed, "because Mr. Lyon had more of the communication than I did." Yet, Paul McCartney repeatedly did make representations.

137.  Paul McCartney also asked that juries be told the same sanction used at Butler County trials with: **"perhaps with instruction that Dr. Durrani has refused to give a deposition and maybe you can draw a negative reference from it."** So nice of him.

138.  On July 10, 2017, Charles Deters sent the attached letter to Mike Lyon proposing five-day long depositions alone for ALL cases. **Exhibit 56.**

139.  On July 14, 2017, Mike Lyon informed Charles Deters of Deters Law Dr. Durrani rejected five days of depositions for all cases. **Exhibit 57.** This defied all logic. Dr. Durrani and his lawyers would prefer over five hundred depositions to five depositions.

140.  On July 24, 2007, Exhibit ___, Judge Sargus entered an Order pertaining to possible sanctions and the potential depositions of Dr. Durrani.

141.  On October 26, 2017, Deters Law made a demand on George Jonson, Mike Lyon's legal counsel. **Exhibit 58.**

142.  On October 30, 2017, Deters Law sent the attached letter to Mike Lyon to Paul McCartney and copied to the Court. Deters Law requested video depositions of Dr. Durrani. **Exhibit 59.**

143.     On January 22, 2018, Deters Law accepted the first three dates offered for deposition offered by Mike Lyon. **Exhibit 60.**

144.     On January 30, 2018, Deters Law informed Mike Lyon and Paul McCartney the deposition would be on all cases. **Exhibit 61.**

145.     Of interest, after refusing this option of on all cases for months, Mike Lyon never even responded to Deters Law declaration the deposition would be in all cases. Why? Because he did not care. He knew his delay game was up and his delays had served their purpose.

146.     Attached are the deposition notices in *Atwood* and all state cases for February 24, 2018. **Exhibit 62.**

147.     Attached is a letter from Mike Lyon attempting to unilaterally cancel the deposition of February 17, 2018 based upon Dr. Durrani needing to talk to his criminal lawyer, Ed Perry. **Exhibit 63.** Imagine, after all this time, that was the excuse given.

148.     Attached is the on the record transcript of the February 17, 2018 deposition which did not happen. **Exhibit 64.** Deters Law did not consent to the cancellation.

149.     Attached is the notice for the February 24, 2018 deposition which did happen. **Exhibit 65.** However, it was promised for ten (10) hours. After six, Dr. Durrani said he was tired. It only went an hour more. Based upon the cancellation of February 18, 2018 (8 hours) and February 24, 2018 going only seven (7) hours, Dr. Durrani owes 9 hours of deposition time on top of March 10, 2018. In addition, two more days of deposition requests from Deters Law have been ignored.

150.     The February 24, 2018 Dr. Durrani deposition was scheduled at Dr. Durrani's convenience on a Saturday at a time of his choosing.

151.    Now take all which has been detailed regarding Dr. Durrani not cooperating and refusing a deposition and compare to the following excerpts from testimony at the February 24, 2018 deposition (**Exhibit 66**) on pages 35-37, 57-58, 60-69 and 93-95. It's now time for a drum roll and a curtain raising.

**Q:  Did you ever tell Medical Protective that you would be unable to cooperate in the defense of the medical malpractice cases filed against you.?**

**A. No.**

**Q. So you never sent a letter or an email that would say something to that effect, is that correct?**

**A.  Not – not to my – not to my knowledge. I have always maintained that I would like to participate in the defense of these cases.**

**Q:  You never received any letters to that effect?**

**A.  I got letters, or emails, correspondence from Medical Protective. And I've always said that I will like be a participant in the defense of these cases.**

**A.  I have no problem.  I have no problem whatsoever being deposed in every single case that you're referring to defend my medical decision-making.  I absolutely have no issue with that.**

**A.  I said I have absolutely no issue in defending my medical decision making in each and every single case.  And I have time and again reiterated my position that I will be happy to defend myself and in the defense of these cases as far as the medical decision making is concerned in these cases.  I have no issue whatsoever with that.**

**Q. And you've been asserting that position since 2013, correct?**

**A.  I've always maintained that position.**

Q. Were you aware that the Deters Law firm has been asking for your deposition numerous times since 2013?

A. I've always – as I said, I will maintain that as long as – as long as the deposition only relates to medical decision making, I'm very happy to participate in the defense of these cases."

Q. Were you aware though, that requests for your depositions have been occurring since 2013?

A. No.

Q. So you're unaware of deposition requests until the deposition today, is that right?

Mr. Lyon:  I'm going to instruct you not to answer that question.

Q. Were there problems prior to now giving depositions between 2013 and today?

A. I've always maintained that as long as the depositions are limited to the medical decision-making of any individual pertinent cases, I'm more than happy to be deposed and defend myself.  That has been my constant position from day one.

Q. Were the requests sent to you in the mail?

Paul McCartney:  Objection.  Don't answer that.

Q. How did you communicate with counsel to work on your discovery requests?

Mike Lyon:  Objection.  Do not answer.

Q. Various answers have been filed in the lawsuits that were filed by the Deters Law Firm.  Did you have an opportunity to review those answers before they were filed?

Mr. Lyon:  --answers to the pleadings?

Mr. Statman:  I said the answers to the lawsuits –

Mr. McCartney:  I'm going to instruct you not to answer that, Doctor.

**Q. Did you approve the answers that were filed in the lawsuits against you?**

**Mike Lyon: Objection. Do not answer, Atiq.**

**A. Okay. I will always maintain that I will participate in the defense of these cases from day one. And that has been my constant position.**

**Q. I asked you if you received any letters from Medical Protective. Do you recall whether you responded to any letters from Medical Protective?**

**Mike Lyon: Objection. Don't answer that question.**

**Q. Were you aware that your deposition was once scheduled for November 26, 2014?**

**A. You know what, I don't – I don't recall it.**

**Q. Do you recall that your deposition was once set for January 22, 2014?**

**A. Don't recall.**

**Q. Was there a time in 2014 that you stopped communicating with your counsel?**

**Mr. McCartney: Objection. Don't answer that.**

**Q. Your counsel informed us that recent efforts to communicate with you had been fruitless. Were you aware that they sent that correspondence to the Deters Law Firm?**

**Mike Lyon: Objection. Don't answer that question.**

**Q. If I understand your testimony about wanting to defend yourself, had you known about the depositions dates that had been previously set, you would have wanted to be there to defend yourself, correct?**

**Mike Lyon: Objection. I instruct him not to answer that.**

152.    None of the above questions asked for privileged information. The instructions not to answer were not proper. The instructions not to answer were to protect Mike Lyon and Paul McCartney's conduct over the last five years, not Dr. Durrani.

153.    It is impossible to reconcile all which Mike Lyon, Paul McCartney, their partners and associates, Medical Protective and their counsel claimed from 2013 to June 2017 and the above testimony of Dr. Durrani.

154.    It must be stressed after the February 24, 2018 deposition, Dr. Durrani is now a witness against all of them.

155.    It is a massive fraud upon Plaintiffs, Deters Law and the Court.

156.    Not ONCE until June 2017 did Mike Lyon or Paul McCartney offer a "limited deposition to specific case." This was something Mike Lyon concocted and clearly why Dr. Durrani stated it in his testimony. This was his position since June 2017 based upon Mike Lyon's decision not for prior years. There was never any "specific case" deposition offered to Deters Law for Plaintiffs in 2013, 2014, 2015 and 2016 and half of 2017. Since 2013, Dr. Durrani's testimony under oath is clear. He wanted to cooperate in his defense and defend from day one. Depositions were no issue. There must be the most serious sanctions, damages and repercussions for the conduct of Dr. Durrani's legal counsel.

157.    Mike Lyon, Paul McCartney and Medical Protective never dreamed Deters Law, on behalf of their clients would sue them. When they embarked on their scheme, they never dreamed this is how it would turn out. What law firm would ever challenge them?

158.    Mike Lyon, his partners and associates involved, Paul McCartney, his partners and associates involved, and Medical Protective officials must be placed under oath and forced to produce correspondence, documents, emails, phone records on the issue of Dr. Durrani's cooperation and deposition.

### ADDITIONAL FACTS

36

159.    There are at least four published Ohio cases where Mike Lyon's history of serious misconduct is pronounced.

160.    Mike Lyon has on numerous occasions sent inappropriate and unethical ex parte emails to at least one Judge in the state civil actions.

161.    We have the transcript and we have requested the audio, where in the *Martin* state trial, Mike Lyon is screaming at the Court for more than a few seconds.

162.    Mike Lyon represented to a Judge in a state civil action, *Shell*, that he was the records custodian of CAST, then, not thinking anyone would remember the weekend before trial, stated there was no custodian and we could not introduce Durrani's records. When confronted in Court by hearing a transcript, he asked if he could change his mind about being record custodian.

163.    Mike Lyon repeatedly misrepresented attempts in the scheduling of the depositions of Dr. Tayeb and Dr. Shanti, two of Dr. Durrani's former employees. While telling Plaintiffs' counsel he was "working on it," neither Mike Lyon, nor his office, ever attempted to schedule Dr. Shanti or Dr. Tayeb for deposition. This was discovered when Dr. Shanti and Dr. Tayeb came forward to testify on behalf of the Plaintiffs and advised they were never contacted by Mike Lyon or his office to give depositions.

164.    Mike Lyon refused to stipulate to medical records and Plaintiffs' counsel was forced to go to the time and expense of issuing a subpoena him for the records. Mike Lyon, in open court on more than one occasion, has stated he would not comply with the subpoena.

165.    Mike Lyon's conduct has been during the entire Dr. Durrani litigation, not just advocacy for Dr. Durrani, which he is duty bound to do, but extraordinary attempts to "win" at all costs, including encouraging Dr. Durrani to flee the United States to vitiate coverage.

37

166.     Mike Lyon has claimed in his defense he would not do this because it would hurt him and his firm if there was no coverage. This statement is completely unfounded because Mr. Lyon knew and knows Medical Protective would have to file a Declaratory Judgment Action and still have to pay him and his firm to defend Dr. Durrani at least under a reservation of rights, and that is exactly what has happened.

## CONSPIRACY TO COMMIT FRAUD AND FRAUD

167.     As fully described in the prior paragraphs, Defendants misrepresented facts, had a duty to disclose facts it did not disclose, and concealed facts.

168.     The facts misrepresented and concealed are material.

169.     The misrepresentations described herein are false with knowledge they are false, and with utter disregard and recklessness as to whether they were true or false and knowledge may be inferred.

170.     Defendants had the intent to mislead Plaintiffs into relying on the misrepresentations.

171.     Plaintiffs justifiably relied upon the representations and/or were harmed by the concealments.

172.     Plaintiffs' injuries were proximately caused by their reliance.

173.     Defendants engaged in a malicious combination.

174.     Defendants, being many in number, acted by two or more.

175.     Defendants' malicious combination caused injury to Plaintiffs.

176.     Defendants committed unlawful acts independent from the conspiracy itself.

177.     The underlying torts necessary are fraud and the commission of a criminal act which by virtue of Ohio Revised Code 2307.60 allows a civil action.

178.    This dispute exceeds the jurisdictional limits of this Court.

WHEREFORE, the Plaintiffs demand judgment against Defendants on all claims and further request compensatory damages, punitive damages, reasonable attorneys' fees and all costs associated with this action.

Respectfully submitted,

\s\ Frederick Johnson
Frederick Johnson (0083071)
DETERS LAW
5247 Madison Pike
Independence, KY 41051
859-363-1900 - telephone
859-363-1444 - facsimile
fjohnson@ericdeters.com
*Counsel for Plaintiffs*

**EXHIBIT A**

| DURRANI CLIENT | CASE NO. |
|---|---|
| 1. Aaron, Frieda | A1706463 |
| 2. Adams, Patricia | A1506958 |
| 3. Agee, Michelle | A1506571 |
| 4. Allen, Jimmy | A1402537 |
| 5. Allen, Katrina | A1700327 |
| 6. Allen, Sherri Lynn | A1706403 |
| 7. Applegate, Rebecca | A1706553 |
| 8. Arnold, Brad | A1504450 |
| 9. Arnold, George | A1706465 |
| 10. Ashcraft, Diana | A1706445 |
| 11. Atkins, Brian | A1706414 |
| 12. Atwell, Jonathan | A1706489 |
| 13. Augst, Thomas | A1506042 |
| 14. Ayres, Amanda | A1400578 |
| 15. Ayres, Amanda- Christ | A1502990 |
| 16. Bachmann, Gayle | A1506044 |
| 17. Bailey, Caidan | A1700298 |
| 18. Baker, Paul | A1504464 |
| 19. Baker, Nicole | A1706365 |
| 20. Ballinger, Jennifer | A1706480 |
| 21. Bartlett, Cindy | A1706599 |
| 22. Batsche, Laura | A1706512 |
| 23. Battista, Nicholas | A1706540 |
| 24. Baumgardner, Joseph | A1700289 |
| 25. Bayliss, Steven as Executor of the Estate of Louise Bayliss | A1602538 |
| 26. Beavan, Michelle | A1505423 |
| 27. Bechtold, Phyllis | A1706549 |
| 28. Beck, Judy | A1706494 |
| 29. Beckelhimer, Troy | A1404075 |
| 30. Begley, Nancy | A1706537 |
| 31. Beil, Cathy | A1302781 |
| 32. Beil, Terry | A1706579 |
| 33. Bender, Mackenzie | A1506577 |
| 34. Benge, Denise | A1504447 |
| 35. Benge, Nicholas | A1504454 |
| 36. Benjamin, Antoinette | A1600764 |
| 37. Benton, Shawnda | A1503378 |
| 38. Benton, William | A1706594 |

**EXHIBIT A**

| | |
|---|---|
| 39. Bess, Denise | A1706442 |
| 40. Beyer, Leona | A1706604 |
| 41. Billing, Trey | A1403074 |
| 42. Bishop, Edythe | A1506609 |
| 43. Bode, Anthony | A1402942 |
| 44. Boggs, Paul, as Administrator of the Estate of Barbara Boggs | A1506302 |
| 45. Boggs, Kaitlyn | A1700307 |
| 46. Boggs, Kaitlyn- Children's | A1700333 |
| 47. Hawks, Stephanie, as Executrix of the Estate of Nancy Boland | A1706538 |
| 48. Bookman, Jennifer | A1706481 |
| 49. Boone, Patricia | A1706541 |
| 50. Borchers, Deena | A1706440 |
| 51. Botner, Doris | A1302782 |
| 52. Botner, Gerald | A1706602 |
| 53. Bowling, Arletta | A1601973 |
| 54. Bowman, Nancy | A1706608 |
| 55. Brackett, Penny | A1706548 |
| 56. Bradshaw, Latoya | A1601544 |
| 57. Brashear, Christina | A1506959 |
| 58. Braucher, Melissa | A1506956 |
| 59. Bray, Dominique | A1700315 |
| 60. Bray, Lindsey | A1706515 |
| 61. Breitenstein, Rebecca | A1306847 |
| 62. Brewer, Randal | A1706552 |
| 63. Brice, Sharon | A1706570 |
| 64. James, Melvin, as Administrator of the Estate of Carrie Britten | A1706528 |
| 65. Brophy, Michael | A1504460 |
| 66. Brorein, Richard, as Executor of the Estate of Eileen Brorein | A1706556 |
| 67. Brown, James | A1706472 |
| 68. Lozier, Richard, as Executor of the Estate Patricia Bruce | A1706557 |
| 69. Brunner, Jonathan | A1706490 |
| 70. Burton, Kayla | A1505678 |
| 71. Buschur, Vicki | A1706590 |
| 72. Bushelman, Kathleen | A1700306 |
| 73. Buskirk, Annette | A1600234 |
| 74. Butler, Brenda | A1403489 |

## EXHIBIT A

| | |
|---|---|
| 75. Byar, Michele | A1706532 |
| 76. Callahan, Douglas | A1706452 |
| 77. Calligan, Patrick | A1401182 |
| 78. Campbell, Jan | A1505625 |
| 79. Campbell, Robert | A1506574 |
| 80. Carr, Andrew | A1505422 |
| 81. Chhun, Bunnavuth | A1706417 |
| 82. Chisman, Tonya | A1706586 |
| 83. Clark, Chris | A1302874 |
| 84. Cochran, Jessica | A1706482 |
| 85. Collins, John | A1504451 |
| 86. Compo, Elizabeth | A1706458 |
| 87. Conger, David | A1700310 |
| 88. Conger, Kenneth | A1505424 |
| 89. Conley, Brenda | A1706412 |
| 90. Conley, Dana | A1706427 |
| 91. Cook, Michael | A1700311 |
| 92. Coots, Gary | A1706464 |
| 93. Cotter, Jacob | A1406929 |
| 94. Couch, Sandra, Administratrix of the Estate of Jackie Couch | A1706567 |
| 95. Courtney, Eric | A1307859 |
| 96. Crail, Michael | A1706529 |
| 97. Crissinger, Karen | A1400584 |
| 98. Crissinger, Karen- Christ | A1502865 |
| 99. Crowe, Joi | A1700300 |
| 100. Crowe, Forrest and Carrie, Individually and on behalf of their Minor Daughter, K.C. | A1505776 |
| 101. Cullins, Joy | A1700283 |
| 102. Curley, Kathryn | A1400583 |
| 103. Dabney, William | A1706595 |
| 104. McCaughey, Christopher, as Administrator of the Estate of Margaret Dailey | A1504459 |
| 105. Dale, Tammy | A1706577 |
| 106. Davis, Joseph | A1506163 |
| 107. Davis, Nellie | A1706539 |
| 108. Dawson, Ralph | A1706550 |
| 109. Deaton, Ollie | A1700313 |
| 110. Deaton, Stefanie | A1506166 |
| 111. Deck, Damon | A1506307 |

**EXHIBIT A**

| | |
|---|---|
| 112. Dennis, Sandra | A1601537 |
| 113. Densler, Robert | A1706561 |
| 114. Dority, Kristine | A1700305 |
| 115. Dotson, Carolyn | A1706418 |
| 116. Doyle, Deborah | A1505421 |
| 117. Drafts, Douglas | A1706453 |
| 118. Dugan, Patrick | A1706542 |
| 119. Dugger, Billy | A1706411 |
| 120. Dunklin, Dawn | A1706434 |
| 121. Durham, Jacob | A1403361 |
| 122. Earls, Darrell | A1706431 |
| 123. Eder, Mona | A1601568 |
| 124. Elfers, Kevin | A1706507 |
| 125. McClure, Barbara, as Executrix of the Estate of Robert Ellington | A1706407 |
| 126. McClure, Barbara, as Executrix of the Estate of Connie McClure-Ellington | A1506608 |
| 127. Elliott, Richard | A1504466 |
| 128. Errgang, Brenda | A1706413 |
| 129. Esselman, Tracy | A1503652 |
| 130. Fait, Arlene | A1506606 |
| 131. Bates, Kimberly, as Administratrix of the Estate of Tony Falkner | A1706408 |
| 132. Favaron, Linda, as Executrix of the Estate of Neil Favaron | A1506607 |
| 133. Feltner, Jacob | A1503379 |
| 134. Feltner, Karen | A1503650 |
| 135. Finnell, Caela | A1706389 |
| 136. Fite, Troy | A1505426 |
| 137. Ford, Shamyia | A1402763 |
| 138. Ford, Francine | A1706462 |
| 139. Fossett, Lennie | A1706513 |
| 140. Franks, Amanda | A1706406 |
| 141. Frazier, Joann | A1706484 |
| 142. Freeman, Julie | A1504131 |
| 143. Gardner, Judith | A1706493 |
| 144. Geralds, Christine | A1700303 |
| 145. Gilbert, Erma Jean | A1706460 |
| 146. Goldstein, Christina | A1700299 |
| 147. Good, Donna | A1706449 |

## EXHIBIT A

| | |
|---|---|
| 148. Graber, Greg | A1603347 |
| 149. Grabow, Maurice | A1706526 |
| 150. Greelish, Erin | A1601539 |
| 151. Greene, Gloria | A1706467 |
| 152. Gregory, Robbie | A1706560 |
| 153. Griessman, Carla | A1504132 |
| 154. Griffin, Susan | A1706575 |
| 155. Grimm, Jenny | A1506165 |
| 156. Habermehl, Melissa | A1706527 |
| 157. Haggard, Lenora | A1706514 |
| 158. Halbert, Taura, Individually and on Behalf of her Son, Paris Halbert | A1504448 |
| 159. Haley, Lynn | A1706520 |
| 160. Hall, Alyssa | A1505430 |
| 161. Hall, David, Administrator of the Estate of Lisa Hall | A1706516 |
| 162. Hall, Ruhama | A1706617 |
| 163. Hamilton, William | A1505427 |
| 164. Hamilton, Samantha | A1706393 |
| 165. Hamilton, Dorothea | A1706451 |
| 166. Hammons, Courtney | A1706426 |
| 167. Handorf, Ryan | A1706379 |
| 168. Hannon, Timothy | A1706583 |
| 169. Hartman, Adam | A1504465 |
| 170. Hartness, Kevin | A1602538 |
| 171. Hastings, Jessica | A1505972 |
| 172. Hatfield, Wayne | A1706592 |
| 173. Hayes, Douglas, Executor of the Estate of William Hayes | A1706454 |
| 174. Haynes, Emily | A1505433 |
| 175. Healy, Minuet | A1403757 |
| 176. Powers, Leslie, Administrator of the Estate of Heather Heffner | A1700281 |
| 177. Powers, Leslie, Administrator of the Estate of Heather Heffner- Children's Case | A1700326 |
| 178. Helton, Denise | A1706368 |
| 179. Helton, Evelyn | A1706461 |
| 180. Henderson, Debra | A1706439 |
| 181. Hennessy, Kelly | A1601546 |
| 182. Hensley, Barbara | A1503355 |
| 183. Hensley, Ryan | A1700316 |

**EXHIBIT A**

| | |
|---|---|
| 184. Herbert, Emily | A1500563 |
| 185. Hersley, Kathy | A1700288 |
| 186. Higginbothan, Karen | A1706495 |
| 187. Hightchew, Alissa | A1306915 |
| 188. Hillard, Michael | A1706530 |
| 189. Hitchcock, Dirk | A1706447 |
| 190. Hoffman, Celeste | A1506961 |
| 191. Hon, Loretta | A1706519 |
| 192. Hortman, Chelsea | A1706421 |
| 193. Houghton, Robert II | A1504133 |
| 194. Hounchell, Ricky | A1706558 |
| 195. Hounchell, Rita | A1706559 |
| 196. Howell, Kathryn | A1706500 |
| 197. Hughes, Tammy | A1506960 |
| 198. Gerbus, Mary, as Administratrix of the Estate of Lois Hughes | A1706525 |
| 199. Hunley, Kevin | A1503649 |
| 200. Hursong, Carolyn | A1602538 |
| 201. Huser, David, as Executor of the Estate of Connie Huser | A1706432 |
| 202. Hutton, Martha | A1505050 |
| 203. Hyde, Irene | A1706471 |
| 204. Ieraci, Elsa | A1706459 |
| 205. Janson, Tracy | A1505049 |
| 206. Jenkins, Kimberly | A1706508 |
| 207. Jobe, Stephanie | A1601540 |
| 208. Johnson, Amber | A1403174 |
| 209. Johnson, Chelsea | A1700294 |
| 210. Johnson, Karen | A1505624 |
| 211. Johnson, Roger | A1700329 |
| 212. Jonas, Sara | A1504134 |
| 213. Jones, Rachel | A1601422 |
| 214. Jones, Tammy | A1506164 |
| 215. Jones, Joan | A1706486 |
| 216. Judkins, Jacqueline | A1506306 |
| 217. Judkins, Jacqueline, as Administratrix of the Estate of Phyllis Judkins | A1700332 |
| 218. McCaughey, Christopher, as Administrator of the Estate of Sarah Juergens | A1602538 |
| 219. Holley, Cathy, Administratrix of the Estate of Linda Kallmeyer-Ward | A1602538 |

**EXHIBIT A**

| | |
|---|---|
| 220. Kauffman, Joshua | A1503668 |
| 221. Kauffman, Katelyn | A1602538 |
| 222. Keplinger, Michelle | A1706607 |
| 223. Kibler, Martha | A1706524 |
| 224. Kidd, Deborah | A1706616 |
| 225. King, Charlotte | A1706420 |
| 226. Knauer, Maggie, as Administrator of the Estate of Christopher Knauer | A1504787 |
| 227. Knauer, Maggie | A1504130 |
| 228. Koch, Amanda | A1602538 |
| 229. Koehler, Rose | A1504135 |
| 230. Koehler, Shannon | A1700297 |
| 231. Koelblin, Mike | A1506160 |
| 232. Kopp, Valarie | A1706589 |
| 233. Krabacher, Sheila Pogue | A1601533 |
| 234. Krech, Larry | A1706511 |
| 235. Lacinak, Brandon | A1400586 |
| 236. Lainhart, Natasha (Dressman) | A1700296 |
| 237. Langford, Maurine and Lyndon, Individually and Behalf of Minor Son, N.L. | A1307857 |
| 238. Lantry, Tom | A1706372 |
| 239. Legendre, Patricia | A1505510 |
| 240. Leger, Karen | A1706496 |
| 241. Leisring, Beth | A1504457 |
| 242. Lemmel, Sandra | A1706568 |
| 243. Levan, Ailene | A1706405 |
| 244. Lilly, Adrian | A1504446 |
| 245. List, Derek | A1503024 |
| 246. List, Lynne | A1505509 |
| 247. Little, Tammie | A1706576 |
| 248. Lovette, Tamala | A1706404 |
| 249. Mains, Vicky | A1600432 |
| 250. Mains, Rhonda | A1706555 |
| 251. Mains, Shirley | A1706573 |
| 252. Mann, Tammy | A1302870 |
| 253. Marcheschi, Jack | A1308383 |
| 254. Martin, Stacy John | A1700309 |
| 255. Martin, Marsha | A1706523 |
| 256. Masters, Robert | A1700295 |
| 257. Mathews, Traci | A1706587 |

## EXHIBIT A

| | |
|---|---|
| 258. Mathis, Brandon | A1307861 |
| 259. Mauntel, Donald, on behalf of his minor daughter M.M. | A1706377 |
| 260. Mayer, Kimberly | A1706509 |
| 261. Mayfield, Derek | A1706443 |
| 262. McCain, James | A1706474 |
| 263. McCall, Jenna | A1706391 |
| 264. McCann, Heather | A1506572 |
| 265. McClendon, Kyra | A1506695 |
| 266. Fletcher, Stacy, as Executrix of the Estate of Jeffrey McClure | A1706478 |
| 267. McDonald, Kevin | A1401890 |
| 268. McDonald, Marcella | A1706521 |
| 269. McKenney, Grant | A1504462 |
| 270. McKinney, Candi | A1700308 |
| 271. McKnight, Tyler | A1503669 |
| 272. McMillen, Teresa | A1706578 |
| 273. McMurren, Mark | A1706606 |
| 274. McNeal, Kameron | A1503653 |
| 275. McNeal, Kerry | A1700328 |
| 276. McQueary, Tonia | A1506957 |
| 277. Meadows, Tiffany | A1706582 |
| 278. Merland, Dawn | A1503354 |
| 279. Messerschmidt, Tiffany | A1505432 |
| 280. Metcalf, Randall | A1706551 |
| 281. Meyer, Diane | A1706446 |
| 282. Meyers, Thomas | A1706581 |
| 283. Middendorf, Lyndsey | A1506649 |
| 284. Miller, Karen | A1706497 |
| 285. Miller, Ryan | A1706566 |
| 286. Mink, Samantha | A1401893 |
| 287. Moffitt, Vera | A1601543 |
| 288. Moore, Stephanie | A1505431 |
| 289. Moore, Tim | A1706371 |
| 290. Moore, Billie | A1706410 |
| 291. Moore, Debbie | TBD |
| 292. Moore, Donald | A1706448 |
| 293. Moore, Robert | A1706563 |
| 294. Mounce, Robert | A1700301 |
| 295. Mueller, Sarra | A1302875 |

**EXHIBIT A**

| | |
|---|---|
| 296. Myers, Jennifer | A1505971 |
| 297. Nafe, Joetta | A1706488 |
| 298. Neal, Tonya | A1706394 |
| 299. Nelson, Charles | A1402760 |
| 300. Newman, Marjorie | A1601535 |
| 301. Nichols, Teresa | A1601569 |
| 302. Nisbett, Rahman | A1503128 |
| 303. Noble, Michelle | A1506041 |
| 304. Nyemba, Ruvimbo | A1602538 |
| 305. Oberlander, Wendy | A1706593 |
| 306. Odulana, Michael | A1505419 |
| 307. Osborn, Timothy | A1706612 |
| 308. Owens, Dannie Mae | A1706429 |
| 309. Payne, Haley | A1706468 |
| 310. Peddicord, Jeff | A1706479 |
| 311. Pelfrey, Duane | A1706470 |
| 312. Pennington, Angela | A1503651 |
| 313. Pfetsch, Nancy, as Executrix of the Estate of Kenneth Pfetsch | A1706505 |
| 314. Phillips, Clarence | A1706425 |
| 315. Pickett, Heather | A1307306 |
| 316. Pickett, Heather- Children's | A1505428 |
| 317. Potts, Jeff | A1206877 |
| 318. Powell, Antoine | A1505434 |
| 319. Prater, Katie | A1601534 |
| 320. Schuster, Heather, as Executrix of the Estate of Lawrence Pridemore | A1506576 |
| 321. Pritchard, Tom, as Administrator of the Estate of Sharon Pritchard | A1706571 |
| 322. Puckett-Morrissette, Sherri | A1601536 |
| 323. Pummell, Carol | A1700287 |
| 324. Pumpelly, James | A1706473 |
| 325. Emerson, Misty, as Administrator of the Estate of Marcia Quinn | A1706536 |
| 326. Radeke, Sandra | A1706569 |
| 327. Radenheimer, Margaret | A1706522 |
| 328. Ravenscraft, Mary | A1506161 |
| 329. Ray, Todd | A1506573 |
| 330. Redrow, Samantha | A1504456 |
| 331. Reed, Mark | A1506490 |

**EXHIBIT A**

| | |
|---|---|
| 332. Reed, Danielle | A1706428 |
| 333. Fenner, Jean, Executor of the Estate of Jane Reeder | A1706492 |
| 334. Reeves, Valerie | A1706588 |
| 335. Reifenberger, Holly | A1604027 |
| 336. Remley, Jeffrey | A1706477 |
| 337. Reynolds, Derrill | A1706444 |
| 338. Reynolds, Harry | A1706469 |
| 339. Reynolds, Kent II | A1706506 |
| 340. Reynolds, Lisa | A1706517 |
| 341. Ribariu, Jordan | A1603343 |
| 342. Richardson, John | A1601542 |
| 343. Riley, Jason | A1706475 |
| 344. Rister, Gordon, as Administrator of the Estate of Donna Rister | A1706450 |
| 345. Roark, Deborah | A1601421 |
| 346. Robbinson-Woods, Theresa | A1505872 |
| 347. Robinson, Kelly | A1706502 |
| 348. Rodriguez, Debbie | A1601532 |
| 349. Romer, Jason | A1706603 |
| 350. Rose, Dorothy | A1506696 |
| 351. Worley, Deborah, as Executrix of the Estate of Fay Rosebery | A1700331 |
| 352. Roundtree, Sandra | A1603341 |
| 353. Rowley, Ronald | A1602538 |
| 354. Carmen, Stephen, as Administrator of the Estate of Kathrynn Rueve | A1706574 |
| 355. Runtz, Robert | A1706562 |
| 356. Rutter, Christina and Joe, Individually and on Behalf of Minor Son, C.R. | A1402941 |
| 357. Sand, Mike | A1506694 |
| 358. Scheper, Chris | A1706423 |
| 359. Schiller, Robin | A1706564 |
| 360. Schimmel, Joseph | A1706491 |
| 361. Schmidt, Kim | A1600109 |
| 362. Schmit, Kevin | A1400009 |
| 363. Schmit, Patrick | A1506162 |
| 364. Schock, Susan | A1700291 |
| 365. Schultz, Steven Andrew | A1506861 |
| 366. Schulze, Timothy | A1706584 |
| 367. Schuster, Ronald | A1506303 |

# EXHIBIT A

| | |
|---|---|
| 368. Scott, Rhonda | A1601541 |
| 369. Scott, Delores | A1706441 |
| 370. Scully, Ali | A1504452 |
| 371. Sears, Ruthie | A1403488 |
| 372. Setters, Dana | A1506570 |
| 373. Shafer, Glenna | A1706466 |
| 374. Shannon, Asia | A1403365 |
| 375. Shepherd, Charlann | A1504455 |
| 376. Shott, Patricia, as Executrix of the Estate of Gregory Shott | A1502144 |
| 377. Sizemore, Michelle | A1706533 |
| 378. Slayback, Heather | A1504453 |
| 379. Warren, Haley, as Administrator of the Estate of Crystal Slone | A1706402 |
| 380. Smallwood, Donna | A1706600 |
| 381. Smith, Donald | A1700302 |
| 382. Smith, David | A1706433 |
| 383. Smoote, Orris | A1504461 |
| 384. Snider, David | A1700285 |
| 385. Spangenberg, Sherrie | A1700317 |
| 386. Spivy, Billy | A1602538 |
| 387. Stallings, Eddie | A1706456 |
| 388. Fisher, David, as Administrator of the Estate of Michelle Stephens | A1706534 |
| 389. Stephenson, Patrick | A1706544 |
| 390. Stigall, Deon Jr. | A1501742 |
| 391. Stratman, Sierra | A1305127 |
| 392. Tackett, Ryan | A1505420 |
| 393. Tanner, Ryan | A1506304 |
| 394. Taylor, Alex | A1402940 |
| 395. Taylor, Karen | A1706498 |
| 396. Thaeler, Ben | A1504449 |
| 397. Thien, Brian | A1706415 |
| 398. Thiessen, Edward | A1706457 |
| 399. Thomas, Adrienne | A1700304 |
| 400. Underwood, Connie | A1700312 |
| 401. Underwood, Kimberly | A1706510 |
| 402. Upchurch, Jacklen | A1700290 |
| 403. Vance, Jordan | A1506575 |
| 404. Wallace, Shannon | A1505425 |

**EXHIBIT A**

| | |
|---|---|
| 405. Wallace, Vicki | A1504458 |
| 406. Walls, Katherine | A1506955 |
| 407. Walsh, Lindsay | A1403490 |
| 408. Walsh, Tracey | A1700286 |
| 409. Walters, Michelle | A1706535 |
| 410. Ward, Helen | A1402762 |
| 411. Watkins, Michael | A1706531 |
| 412. Waxler, Elaine | A1706601 |
| 413. Webber, Daniel | A1403644 |
| 414. Weber, Cathleen | A1504463 |
| 415. Webster, Brandon | A1505429 |
| 416. Weisbecker, Laura | A1506223 |
| 417. Weisman, Kirstin | A1706392 |
| 418. Wesley, Regina | A1706554 |
| 419. Whalen, Timothy | A1706585 |
| 420. Whalen, Violet | A1706591 |
| 421. Wheeler, Lonnie | A1706518 |
| 422. White, Sophia | A1600232 |
| 423. Wilder, Joseph, as Administrator of the Estate of Tamathy Wilder | A1706611 |
| 424. Wilder, Troy | A1706613 |
| 425. Williams, Benjamin | A1706409 |
| 426. Williams, Kelly | A1706504 |
| 427. Willoughby, Patrick | A1706543 |
| 428. Wilson, Alisa, Individually and on Behalf on her Minor Son, J.W. | A1505775 |
| 429. Wilson, Robert | A1506860 |
| 430. Wilson, Terry | A1600233 |
| 431. Wilson, Vicky | A1601538 |
| 432. Wilson, Carol | A1706419 |
| 433. Wilson, Jetton | A1706483 |
| 434. Wilson, Paula | A1706545 |
| 435. Wilson, Paul | A1706547 |
| 436. Wingert, Dawn | A1706436 |
| 437. Wittmeyer, Priscilla | A1706609 |
| 438. Wolder, Bill | A1700292 |
| 439. Wolsing, Billy | A1506693 |
| 440. Wooten, Carla | A1601545 |
| 441. Work, Amber | A1706597 |
| 442. Worley, Deborah | A1706438 |

**EXHIBIT A**

| | |
|---|---|
| 443. Wright, Cory | A1402534 |
| 444. Wright, Ron, as Executor of the Estate of Leah Wright | A1706565 |
| 445. Wyatt, Cheryl | A1505970 |
| 446. Yeakle, Veronica | A1600235 |
| 447. Young, Evelyn | A1502866 |
| 448. Young, Joann | A1706485 |
| 449. Young, Judy | A1406361 |
| 450. Young, Keith | A1706501 |
| 451. Zachry, Corrine | A1600762 |
| 452. Zureick, Mary | A1400581 |
| 453. Zymslo, Hannah | A1506305 |